UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICK COLLINS, INC.<br><br>    *Plaintiff,*<br> v.<br><br>DOES 1-33,<br>    *Defendants.* | CIVIL ACTION No.: 1:12-cv-10757 |

**REPLY TO PLAINTIFF'S OPPOSITION TO DOE 21'S MOTION TO QUASH
SUBPOENA AND/OR TO SEVER**

Plaintiff Patrick Collins, Inc.'s ("Plaintiff") Opposition (Document No. 16) (the "Opposition") provides no basis to deny the relief sought in Defendant Doe 21's Motion to Quash Subpoena and/or to Sever (Document No. 14) (the "Motion"). Instead, as discussed hereunder, the Opposition provides further demonstration that Plaintiff fails to meet its burden to both show good cause for pre-hearing discovery under *McMann*, and to justify joinder of defendants under Federal Rule of Civil Procedure 20(a)(2). Therefore, Doe 21 respectfully renews its request that the Court revoke the order granting pre-hearing *ex parte* discovery and quash Plaintiff's subpoena to Comcast, and/or sever Doe 21.

**I. Plaintiff's arguments concerning standing are incorrect.**

**A. A party has standing to move to quash a subpoena issued to a non-party upon showing a privilege, personal right, or sufficient interest in the information sought.**

Plaintiff argues that as a party (Doe 21) has standing to move to quash a subpoena issued to a non-party only if it can "assert some privilege to the requested document." (Document No. 16 p. 5.) The Federal Rules are broader: a court "*must* quash or modify a subpoena that ... requires disclosure of privileged *or other protected matter*, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii) (emphasis added). Accordingly, Rule 45 standing in this Circuit is not as narrow as Plaintiff pretends. A party with "a *sufficient interest* to warrant its intervention in" information requested by a subpoena has standing to file a motion to quash,

1

"notwithstanding that it is not the party subpoenaed." *Taylor v. Litton Med. Prods., Inc.*, 19 Fed. R. Serv. 2d 1190, 1192, 1975 WL 166114, *3 (D. Mass. Jan. 23, 1975) (emphasis added). "Typically, a motion to quash may only be made by the party to whom the subpoena is directed. ... However, if a party seeking to challenge a subpoena has *a personal right* or privilege with respect to the requested information, that party may have standing." *Shea v. McGovern*, Civ. A. No. 1:08-12148-MLW, 2011 U.S. Dist. LEXIS 8992, *10 n. 4 (D. Mass. Jan. 31, 2011) (emphasis added) (defendant who had "asserted a personal right to the information contained in his personnel file" had standing to move to quash subpoena issued to non-party) (citing, *inter alia*, *Sterling Merch., Inc. v. Nestle, S.A.*, 470 F. Supp. 2d 77, 81 (D.P.R. 2006)).[1]

The Opposition cites four cases for the proposition that grounds for standing is limited to privilege claims. Two of its cited cases[2] quote the same sentence from the third, *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997), in which only "claims of privilege" (and not other rights or interests) was mentioned as a basis for a party's standing to move to quash a non-party subpoena. (Document 16 p. 5.) Plaintiff neglected to quote *Windsor*'s next sentence: "A party also may move to quash a subpoena upon a showing that there is a privacy interest applicable." *Id.* (citations omitted). The Opposition fails to mention that the fourth case it cites in support instead stands for the broader reading of the law, in the Eleventh Circuit (as elsewhere), "the general rule is that a party lacks standing to challenge subpoenas served on another, unless that party alleges a personal right or privilege with respect to the materials subpoenaed." *Armor Screen Corp. v. Storm Catcher, Inc.*, Case No. 07-81091-Civ, 2008 U.S. Dist. LEXIS 106370, *8 (S.D. Fla. Nov. 24, 2008) (internal quotation omitted). Thus, none of those cases support

---

[1] See also *Arista Records LLC v. Does 1-27*, 584 F. Supp. 2d 240, 253 n. 17 (D. Me. 2008) ("'Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.'") (quoting 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459, at 435 (3d ed. 2008)) (finding anonymous Doe Defendants alleged to have infringed plaintiffs' copyrights had standing to challenge subpoenas issued to their ISP seeking information identifying them).

[2] *United States Bank National Association v. James*, 264 F.R.D. 17, 18-19 (D. Me. 2010) and *Liberty Media Holdings, LLC v. Swarm Sharing Hash File AE340D0560129AFEE8D78CE07F2394C7B5BC9C05*, 821 F. Supp. 2d 444, 450 (D. Mass. 2011).

Plaintiff's misstatement of governing law, and cases suggesting otherwise based on a partial quotation of *Windsor* should not be seen as limiting a party's standing.

**B.      Doe 21 has standing to move to quash anonymously, founded in his privacy interest.**

Doe 21 asserts a personal right to and interest in the privacy of information contained in his ISP subscription records. (Motion p. 17.) The core right to privacy guaranteed by the Fourteenth Amendment "encompasses and protects the personal intimacies of the home..." *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65 (1973). That interest is heightened in this case because loss of privacy would expose Doe 21 to public opprobrium.[3]

Plaintiff posits that the heightened interest in anonymity found in a case in which the sexual practices at issue were not "generally accepted without controversy, ridicule, or derision," *Doe v. Blue Cross & Blue Shield of Rhode Island*, 79 F. Supp. 2d 72, 74 (D.R.I. 1992), is absent because online pornography is so pervasive. (Opposition pp. 5-6 ("It can hardly be said that pornographic films are outside the realm of conventional practices.").) But Plaintiff must know that online pornography is popular in part *because* it is seen as—and seen in—private.

> [P]ornography is different on the computer networks. You can obtain it in the privacy of your home—without having to walk into a seedy bookstore or movie house. You can download only those things that turn you on, rather than buy an entire magazine or video. You can explore different aspects of your sexuality without exposing yourself to communicable diseases or public ridicule.

Philip Elmer-Dewitt, "On A Screen Near You," *Time*, July 3, 1995, at 38. If Plaintiff's film was infringed as alleged, the infringers did not risk public humiliation by walking into a movie theatre with "Real Female Orgasms #13" on the marquee.[4] They did so in seclusion, manifesting

---

[3] See, e.g., *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("This right to receive information and ideas, regardless of their social worth ... is fundamental to our free society. Moreover, in the context of this case—a prosecution for mere possession of printed or filmed matter in the privacy of a person's home—that right takes on an added dimension."); *Paris Adult Theatre*, 413 U.S. at 85 n. 9 (Brennan, J., dissenting) (citing *Stanley*, discussing "the right to receive information without regard to its social worth—that is, without regard to its obscenity"); *Steese, Evans & Frankel, P.C. v. Sec. & Exch. Comm'n*, Civ. A. No. 10-cv-01071, 2010 U.S. Dist. LEXIS 129401, *25 (D. Colo. Dec. 7, 2010) (finding when "the public was informed that employees were found to have spent hours at work viewing sexually explicit websites ... the sexual nature of the misconduct reinforces the need to protect the privacy interests of these individuals").

[4] One scene in Woody Allen's film Bananas makes manifest the humiliation thus avoided, when Allen's character Fielding Melish attempts to buy a pornographic magazine:

their interest in privacy, which should not be lightly ignored. See *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006) (fact that internet searches are commonly for pornography indicates that search users have an expectation of privacy). That interest in avoiding public association with pornography is critically important for defendants wrongly accused.

> In such cases, there is a risk not only of public embarrassment for the misidentified defendant, but also that the innocent defendant may be coerced into an unjust settlement with the plaintiff to prevent the dissemination of publicity surrounding unfounded allegations. The risk of a shake-down is compounded when the claims involve allegations that a defendant downloaded and distributed sexually explicit material.

*Patrick Collins, Inc. v. Does 1-4*, 12 Civ. 2962 (HB), 2012 U.S. Dist. LEXIS 82253, *4 (S.D.N.Y. June 12, 2012).

**C.    Plaintiff presents an unduly narrow reading of the privacy interest rooted in Fourth Amendment cases that are not properly applicable in this context.**

The Supreme Court has defined a "reasonable expectation of privacy" as one "that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *United States v. Jones*, 565 U.S. ___, 132 S. Ct. 945, 951 (2012) (quoting *Minnesota v. Carter*, 523 U.S. 83, 88 (1998)). Doe 21 had such a reasonable expectation. "Individuals generally possess a reasonable expectation of privacy in their home computers." *United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004). "[T]he mere act of accessing a [computer] network does not in itself extinguish privacy expectations." *United States v. Heckencamp*, 482 F.3d 1142, 1146 (9th Cir. 2007). Plaintiff claims that Internet users have no expectation of privacy in ISP subscriber information, having conveyed it to their ISPs, a principle articulated in child pornography cases but lately applied wholesale to copyright matters. (See Document No. 16 pp. 6-7.) Child pornography

---

Melish: Get a copy of Time magazine, and I think I'll take Commentary and the Saturday Review ... [looks over shoulder] and uh, let's see, Newsweek and uh, I suppose, grab one of these ... [brings magazines to counter] Take 'em all.
Counterman: Fifty, a dollar, dollar and a quarter... Hey, Ralph, how much is a copy of Orgasm?
Melish: Just put 'em in a bag, will you?
Ralph: What?
Counterman: Orgasm. This man wants to buy a copy. How much is it?

involves a host of considerations ill-suited to copyright claims: criminal law instead of civil law; subpoenas obtained by the government rather than private parties; harms suffered by children, rather than the plaintiff; and harms to physical and mental well-being, rather than to intellectual property. For those reasons alone, the precedents cited in the Opposition are inapposite.[5]

More significantly, the cases Plaintiff cites misapprehend privacy itself.

> [P]rivacy ... is not a binary, all-or-nothing characteristic. There are degrees and nuances to societal recognition of our expectations of privacy: the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law. ... "The mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone."

*Sanders v. Am. Broad. Cos., Inc.*, 978 P.2d 67, 72 (Cal. 1999) (quoting 1 J. Thomas McCarthy, The Rights of Publicity and Privacy § 5.10(A)(2) (1998)). Doe 21 has claimed a right to privacy in preventing disclosure of information that would lead him to being publicly associated with pornography, erroneously or otherwise.[6] The right Doe 21 claims "involve[s] a particular conception of privacy whereby 'private' matters are those one would prefer to keep hidden from other people because disclosure would be embarrassing or compromising." *Ostergren v. Cuccinelli*, 615 F. 3d 263, 282 (4th Cir. 2010) (citations omitted). At the same time, Doe 21's right arises from a different ground that "involves a different conception of privacy not predicated on secrecy." *Id.* Under this second conception, the privacy interest hinges on "the individual's control of information concerning his or her person." *Id.* at 283 (quoting *Nat'l Cable & Telecomm. Ass'n v. Fed. Commc'ns Comm.*, 555 F. 3d 996, 999 (D.C. Cir. 2009)). This control-based view "acknowledges that privacy includes the right not just to determine whether certain information will be disclosed, but the extent to which it will be disclosed, and the uses to

---

[5] "Mindlessly importing a standard for child-porn search-and-seizure cases flattens the problem entirely, removing from view the very real concern with frivolous (or even extortionate) litigation." *Citizen Media Law Project Blog*, John Sharkey, The Curious Case of the D.C. District's Anonymity Orders (Feb. 3, 2012) (available at http://www.citmedialaw.org/blog/2012/curious-case-dc-districts-anonymity-orders) ("Sharkey").

[6] "The privacy interest implicated when misconduct is present is the same as when it is absent - to control the dissemination of information concerning the" moving party. *Steese, Evans & Frankel,* 2010 U.S. Dist. LEXIS 129401, at *22-23.

which it will be put." Allyson Haynes, *Virtual Blinds: Finding Online Privacy in Offline Precedents*, 14 Vand. J. Ent. & Tech. L. 603, 611 (2012). Both conceptions of privacy apply to Doe 21: if his subscriber information is disclosed, he will face extortionate settlement demands; absent settlement, he risks grave humiliation if publicly accused of downloading pornography.

In arguing against Doe 21's privacy interest in his ISP subscriber information, the Opposition rests solely on cases applying a secrecy-based view of privacy, ignoring cases that take a control-based view. (Opposition p. 6.) Plaintiff treats privacy like a hermetic seal that cannot be resealed once opened for any purpose, as though the personal information disclosed to an ISP in order to subscribe irrevocably exposes the subscriber to the world from then on. The Supreme Court takes a less binary view, in which even the fact that "an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information." *United States Dep't of Justice v. Reporters' Comm. for Freedom of the Press*, 449 U.S. 749, 770 (1989) (citation omitted). "In an organized society, there are few facts that are not at one time or another divulged to another." *Id*. at 763. "Hardly anyone in our society can keep altogether secret very many facts about himself. Almost every such fact, however personal or sensitive, is known to someone else. Meaningful discussion of privacy, therefore, requires the recognition that ordinarily we deal not with an interest in total nondisclosure but with an interest in selective disclosure." *Id*. at 763 n. 14 (internal quotation omitted). This more nuanced approach is better suited to the issues presented. "The argument that you give up your interest in online anonymity by *subscribing to the Internet* just can't be right."[7] All Internet subscribers have a legitimate interest in selective disclosure that protects them from exposure to extortion settlement scams.

## II.   Plaintiff fails to show that its *ex parte* motion for early discovery satisfies *McMann*.

Plaintiff accepts that the *McMann* factors govern this court's determination on its motion for early discovery, but fails to address most of those factors, and fails to satisfy any of them.

---

[7] Sharkey, cited at footnote _____ *supra* (emphasis in original).

To justify deviation from the normal course of discovery under Rule 26(d), Plaintiff must show the "good cause" required by Rule 26(b) by "demonstrat[ing] an urgent and compelling need for the requested discovery." *Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd.,* 765 F. Supp. 2d 87, 90 (D. Mass. 2011). "Courts have applied essentially two standards for determining whether good cause exists for expedited discovery." *Id.* at 88. Those two standards are a four-part inquiry articulated in *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982) and the broader "reasonableness" test applied by, among others, *McMann v. Doe*, 460 F. Supp. 2d 259 (D. Mass. 2006). *Momenta*, 765 F. Supp. at 89. Both parties use the *McMann* test, so this Court should do the same. *See id.* ("The Court's decision as to which test to utilize here is straightforward: the parties both apply the [*McMann*] reasonableness analysis in their memoranda."); see also Opposition at pp. 4-5 (arguing that the *McMann* factors are satisfied).

Under *McMann*, the five factors weighed in asssessing good cause are "the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity." *Id.*, 460 F. Supp. 2d at 265. The Opposition does not bear Plaintiff's burden as to any of the five *McMann* factors.

**A.     The Opposition concedes two of the *McMann* factors -- likelihood of success on the merits and the degree of prematurity -- by failing to address them entirely.**

The Opposition does not even contend that Plaintiff is likely to succeed on the merits. See Motion pp. 11-14; see also *id.* at p. 10 ("Plaintiff has not shown that its uncertain identification of defendants would survive a motion to dismiss."); *McMann*, 460 F. Supp. 2d at 268 ("a preliminary screening of Plaintiff's assertions show that not only could they not pass summary judgment, but that they fail to state a claim"). Likewise, Plaintiff does nothing to argue that its motion for pre-hearing discovery is not premature. See *Momenta*, 765 F. Supp. 2d at 90 ("The majority of courts have held ... that the fact that there was no pending preliminary injunction

motion weighed against allowing plaintiff's motion for expedited discovery.") (citations omitted).

Though its failure to engage these two *McMann* factors is particularly acute, Plaintiff fares no better with the three factors it does (however tangentially) deign to address.

**B.     The Opposition does not squarely address a third *McMann* factor, the ability of the discovery to preclude demonstrated irreparable harm.**

Applying *McMann*, a Court considers whether the party seeking expedited discovery under Rule 26(f) has demonstrated any irreparable harm, and whether the discovery sought would preclude the harm. The Opposition fails to squarely address either issue. First, Plaintiff's claim is fully compensable so it has not shown irreparable injury. (Motion p. 10-11.) The only harm identified by the Opposition is economic: "if denied discovery of doe defendants' identity, there will be no *monetary damages* because suit could not proceed." (Opposition at pp. 4-5) (emphasis added). Irreparable harm is not shown unless "an adequate remedy at law is not present." *Auburn News Co., Inc. v. Providence Journal Co.*, 659 F. 2d 273, 277 (1st Cir. 1981) (reversing grant of preliminary injunction where discovery was expedited); accord *Donoghue v. IBC USA (Publ'ns), Inc.*, 70 F. 3d 206, 219 (1st Cir. 1995) (affirming determination that no irreparable harm shown where money damages would be available); *Foxboro Co. v. Arabian Am. Oil Co.*, 805 F. 2d 34, 36 (1st Cir. 1986) ("We do not find irreparable injury where only money is at stake and where the plaintiff has a satisfactory remedy at law to recover the money at issue."); *Paper Thermometer Co., Inc. v. Murray*, Civ. No. 10-cv-419-SM, 2012 U.S. Dist. LEXIS 7045, *26 (D.N.H. Jan. 23, 2012) (doubting "that a copyright ... plaintiff who demonstrates a likelihood of success on the merits creates a presumption of irreparable harm"). Indeed, Plaintiff's willingness to settle claims with defendants for money payments undermines any claim of irreparable harm.

Second, the discovery sought would not preclude the harm. Plaintiff contends that the discovery is *necessary* for relief but has not shown that the discovery would be *sufficient* to

provide relief, as *McMann* requires. The discovery will identify Internet subscribers, not infringers, and Plaintiff offers no sufficient basis to believe that discovery about Doe 21 will lead to an infringer. "[I]t is no more likely that the subscriber to an IP address carried out a particular computer function -- here the purported illegal downloading of a single pornographic film - than to say an individual who pays the telephone bill made a specific telephone call." *In re BitTorrent Adult Film Copyright Infringement Cases*, Civ. A. No. 11-3995 (DRH) (GRB) 2012 U.S. Dist. LEXIS 61447, *8 (E.D.N.Y. May 1, 2012). Plaintiff cannot reasonably claim that this discovery *will* show Doe 21 to be the alleged infringer it claims to have tracked. "[T]he only information known to petitioner is the identified IP addresses. [Petitioner] seeks the identities of the subscribers associated with the identified IP addresses. However, that information alone would not reveal who actually downloaded petitioner's work, since the subscriber's Internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's Internet connection without authorization." *In re Ingenuity 13 LLC*, No. 11-mc-0084-JAM-DAD, 2012 U.S. Dist. LEXIS 38647, *17-18 (E.D. Cal. Mar. 21, 2012).

Plaintiff's bare claim that Doe 21's IP address *may* be relevant to the infringer's identity is insufficient. (Opposition pp. 8-9.) Plaintiff argues that "John Doe 21 will, at least, have knowledge of the identity or location of persons who know of any discoverable matter, e.g., the names and related information of the other users, if any, of the IP address during the relevant time period." (*Id.* p. 9.) That tendentious claim is cast in doubt by the variety of technical reasons why innocent subscribers are identified as infringers. (Motion pp. 4-5.) Plaintiff concedes that, for several of those technical reasons, its tracking methods lead to false positives (but calls such situations "rare"). (Opposition p. 3-4.) Further doubt comes from an opinion Plaintiff itself quotes, and even includes as an exhibit, in which the court pointed out multiple flaws in the CEG model: "the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks." *Digital Sin, Inc. v. Does 1-176*,

279 F.R.D. 229, 242 (S.D.N.Y. 2012); see also *In re BitTorrent*, 2012 U.S. Dist. LEXIS 61447, *8-9 ("Unless the wireless router has been appropriately secured (and in some cases, even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film."). In these cases, the subscriber's information would be a dead end for investigative purposes, precluding no irreparable harm.

C.     **Plaintiff has not refuted Doe 21's central argument on a fourth *McMann* factor that Plaintiff's record of bad faith litigation shows the discovery's improper purpose.**

Plaintiff seeks discovery to coerce settlements from Defendants, without sufficient evidence of their wrongdoing, avoiding the scrutiny of the Court and the burden of proving to a jury any individual case. (See Motion pp. 5-7, discussing Plaintiff's record of bad faith litigation.) Doe 21 has identified Plaintiff's purpose as extortive. (Motion p. 6.) That purpose is illegitimate, as it provides only another instance of Plaintiff's bad faith litigation. Plaintiff does not deny its record of bad faith litigation, but argues that it is somehow "moot" on the following ground: Plaintiff claims it now plans to file new suits against individuals. (Opposition p. 4) The ground is a red herring. At issue here is Plaintiff's (not Attorney Cable's) bad faith, which is manifest in a long succession of claims left unpursued in court by Plaintiff and Attorney Cable's employer, the Copyright Enforcement Group. Plaintiff apparently concedes its prior bad faith when it attempts to distinguish its current attorney from CEG's track record: "Importantly, Counsel for the Plaintiff in this district is proceeding differently from [sic] of attorneys in other districts." (*Id.*) After more than 11,000 Does and 160 separate lawsuits, Plaintiff has not pointed to any named defendant it has served with process, in or out of this District, through Attorney Cable or anyone else.

In the Opposition Plaintiff claimed to be on the verge of changing course, lawsuits in this district on behalf of Patrick Collins, Inc. These new lawsuits will be filed against individuals and not multiple Does." (Opposition p. 4 (emphasis added).) Plaintiff filed this Opposition on August 23, 2012, nearly two weeks ago, but has filed no such amended complaint or new lawsuit in this

District. The emperor's new clothes appear to be cut from the same cloth. Even if Plaintiff does file a few token claims against named defendants (after Doe 21's Motion laid bare Plaintiff's modus operandi) that bad faith would not be cured or mooted in retrospect. For that matter, if Plaintiff amends the complaint in one of its other cases in this District, as the Opposition intimated, it would not show good faith toward any defendants in *this* case, including Doe 21.

Plaintiff's claim that it needs the subpoenaed information to build its case (Opposition p. 19) only begs the question: which case? Plaintiff's stated plan to refile its claims introduces a new reason to deny discovery: it would not serve any proper purpose in *this* suit. "[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978). "[T]he defendant cannot subpoena documents for the purpose of inspection and investigation with the view to eventually subpoenaing them to a trial or deposition or other legal proceeding." *Taylor*, 1975 WL 166114 at *3. Just that situation exists when "the plaintiffs are not seeking [the requested information] for the purpose of litigating their current claims. Instead, the plaintiffs intend to either sue the individuals whose identity they uncover or, more likely, to negotiate a settlement with those individuals." *Pac. Century Int'l, Ltd. v. Does 1-37*, 102 U.S.P.Q. 2d (BNA) 1201, 2012 U.S. Dist. LEXIS 44368, *17 (N.D. Ill. Mar. 30, 2012) (quoting *Oppenheimer*). Plaintiff's request should be denied as not relevant under Rule 26(b)(1), because it is not "reasonably calculated to lead to the discovery of admissible evidence" in this action.

**D.     The discovery would impose an undue burden on Doe 21.**

The Opposition attempts to squarely address only one of the *McMann* factors: the "burden of discovery on the defendant." *McMann*, 460 F. Supp. 2d at 265. Plaintiff's shakedown scheme is inherently burdensome. The burden placed on erroneously identified defendants, who become more fodder for Plaintiff's extortion mill, necessarily outweighs any benefit to such discovery. But Plaintiff contends that its subpoena imposes no "undue burden," because the effect on Doe 21 and other defendants is irrelevant -- in effect, mounting its standing argument

oonce again. It argues that the Court's authority under Federal Rule of Civil Procedure 45 to prevent an "undue burden" applies only to the non-party directly compelled to respond to the discovery request, not a party affected by the request.

Rule 45 includes no such limitation. It requires a court to "quash or modify a subpoena that ... subjects *a person* to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv) (emphasis added). "Clause (c)(3)(A)(iv) requires the court to protect *all persons* from undue burden imposed by the use of the subpoena power." Fed. R. Civ. P. 45 adv. comm. note (1991) (emphasis added). The Rule's drafters were fully capable of limiting its scope where desired. Rule 45(c)(1) requires one issuing or serving a subpoena to reasonably "avoid imposing undue burden or expense on a person subject to that subpoena." If the drafters had intended to limit the reach of Clause (c)(3)(A)(iv)'s protection, they would have stated that the burden was only pertinent if felt by a person subject to the subpoena. Reading such a limitation into the Rule, where none appears on its face, would unnecessarily introduce internal inconsistencies. Accord *In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. 334, 342 (E.D. La. 2006) (construing "person" under Rule 45 "according to normal rules of statutory interpretation" so as to avoid contradicting other Rules). Indeed, the drafters expressly provide broader protections in other clauses, as in Rule 45(c)(3)(B), where "a person" includes one "subject to *or affected by* a subpoena" (emphasis added). This more inclusive reading fits the unlimited scope of Clause (c)(3)(A)(iv). A person who reasonably shows that he or she will be affected by a subpoena is within the Rule's reach, even if the subpoena is directed to a third party. See, e.g., *London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153 (D. Mass. 2008) (granting motions filed by Doe defendants to quash Rule 45 subpoenas isued to their ISPs seeking the Does' identities); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606 (E.D. Va. 2008) (affirming grant of motion by witnesses in a pending action to quash subpoena issued to their email provider seeking production of their emails).

The burden imposed by the subpoena on Doe defendants is wholly disproportionate to any need. Plaintiff quotes, and attaches as an exhibit, an opinion in another CEG case denying

discovery where "the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks." *Digital Sin*, 279 F.R.D. at 242. Plaintiff apparently recognizes that it is only *possible* that the subpoena will yield probative information: it is only "the beginning of the discovery process." (Opposition p. 8.) But it undeniably *will* cause a breach of privacy. See *In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1216 (D.C. Cir. 2004) (quashed subpoena affirmed "because there was only 'the possibility' that the records might have something probative in them, while their disclosure *would* cause 'the loss of privacy by the [affected parties]'") (quoting with approval *Nw. Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 924-27 (7th Cir. 2004) (emphasis added)).

There is no certainty that any given Internet subscriber tracked by Plaintiff in fact has a content file. Plaintiff's counsel CEG confessed, in *Digital Sin*, that its tracking of IP addresses identifies many people who are not infringers, estimating that "30% of the names turned over by ISPs are ... the 'teenaged son ... or the boyfriend if it's a lady.'" 279 F.R.D. at 242. That unacceptable rate of error should bar discovery based on the same flawed technology. Plaintiff argues that "it still means that the offender is within the household. ... Bottom line is that the IP address leads to the correct Internet connection." (Opposition p. 12.) But the *Digital Sin* opinion found otherwise: the "risk of false positives" is *even greater* than 30%, counting neighbors accessing the Internet through shared IP addresses or networks. 279 F.R.D. at 242 (ordering protective order "to spare parties 'annoyance, embarrassment, oppression, or undue burden'" under Fed. R. Civ. P. 26(c)(1)).

### III. CONCLUSION

Wherefore, and for the reasons previously given in Doe 21's motion, Doe 21 respectfully requests that the Court's order granting Plaintiff's motion for leave to take expedited discovery concerning Doe 21 be revoked and the subpoena issued thereunder by Plaintiff to Comcast be quashed, and/or that Doe 21 be severed from the action.

Respectfully submitted by counsel for Defendant Doe 21 on September 4, 2012.

_____
Roberto C, Rondero de Mosier
Texas State Bar No. 24051964
GONZALEZ & MOSIER LAW PLLC
111 Congress Ave., Suite 400
Austin, TX 78701
Tel: (512) 394-3564
Fax: (888) 293-9521
Email: rc@gonzalezmosier.com
ATTORNEY FOR DOE 21 APPEARING PRO HAC VICE

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2012, the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be served via first-class mail to those indicated as non-registered participants.


_____
Roberto C. Rondero de Mosier